IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 12-cv-00668-WYD-DW

VIESTI ASSOCIATES, INC.

Plaintiff,

v.

McGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC and
McGRAW-HILL SCHOOL EDUCATION HOLDINGS, LLC,

Defendants.

---

**ORDER ON SUMMARY JUDGMENT**

---

I. INTRODUCTION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment (ECF No. 89), filed by defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC ("McGraw-Hill").

In this action, Plaintiff Viesti Associates, Inc. ("Viesti"), a stock photography agency, brings suit against McGraw-Hill, an educational publisher, alleging that McGraw-Hill has exceeded usage restrictions in photograph licencing agreements and engaged in copyright infringement. I note that Viesti filed two other actions in this Court on similar (if not identical) grounds against a different educational publisher, and United States District Judge Philip Brimmer recently granted summary judgment in both cases, finding that Viesti lacked standing to sue under the Copyright Act because it did not have the necessary ownership interest in the allegedly infringed photographs. *See Viesti Assocs., Inc. v. Pearson Educ., Inc.* ("*Pearson* I"), No. 11-cv-01687-PAB-DW,

2014 WL 1053772 (D. Colo. March 19, 2014)*; see Viesti Assocs., Inc. v. Pearson Educ., Inc.* ("*Pearson* II"), No. 12-cv-01431-PAB-DW, 2014 WL 1055975 (D. Colo. March 19, 2014).[1] Thus, here, McGraw-Hill contends that given the overlap of copyright ownership issues and Viesti's full and fair opportunity to litigate those issues in both *Pearson I and II*, Judge Brimmer's decisions have collateral estoppel effect on the issue of whether Vesti has standing to bring suit in this case. In response, Viesti argues that the existence of new law and facts prelude the application of collateral estoppel. After carefully considering the parties' briefs and applicable legal authorities, I grant the motion.

## II. BACKGROUND

Viesti is a stock photography agency based in Durango, Colorado that licenses photographs to publishers. Between 1990 and 2006, McGraw-Hill was granted limited licenses by various stock photo agencies to reproduce certain photographs (the "McGraw-Hill Photographs"). (ECF No. 34 at 3-8). Viesti's claims arise out of allegations that Viesti owns the copyright to these photographs and that McGraw-Hill "exceeded the applicable license limitations" by using the photographs in "unlicensed, unauthorized and uncompensated ways." (ECF No. 34 at 8-9).

The McGraw-Hill Photographs consist of images authored by various

[1] A third case filed by Viesti against Pearson involving identical claims was also pending before Judge Brimmer until the parties voluntarily agreed to dismiss the case on August 5, 2014. *See Viesti Assocs., Inc. v. Pearson Educ., Inc.* (*Pearson III*), No. 12-cv-02240-PAB-DW (D. Colo. 2014).

photographers that were licensed to McGraw-Hill by numerous entities.[2] (ECF No. 34 at 408). Viesti claims that it acquired an ownership interest in the McGraw-Hill Photographs by virtue of written agreements entered into between Viesti and the various photographers referenced in Exhibit 20 to the Amended Complaint.

A. Copyright Assignments

Prior to filing suit in this case, in 2009 and 2010, Joseph Viesti, Viesti's principal, emailed various photographers and third party stock photo agencies and requested that they join Viesti's copyright lawsuit against educational publisher Houghton Mifflin Harcourt ("HMH") by signing an "Assignment of Copyright." The majority of these assignments nominally titled "Copyright Assignment and Accrued Causes of Action Agreement," are identical and read:

> The undersigned photographer, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Viesti Associates, Inc. ("Viesti") and now included in Viesti's collection, hereby grants to Viesti all copyrights and complete legal title in the Images. Viesti agrees to reassign all copyrights and complete legal title back to the undersigned immediately upon resolution of infringement claims brought by Viesti relating to the Images.
>
> The undersigned agrees and fully transfers all right, title and interest in any accrued or later accrued claims, causes of action, choses in action - which is the personal right to bring a case - or lawsuits, brought to enforce copyrights in the Images, appointing and permitting Viesti to prosecute said accrued or later accrued claims, causes in actions, choses in action or lawsuits, as if it were the undersigned.

(ECF No. 90-3). The photographers did not sign any separate assignment agreements for this litigation against McGraw-Hill prior to the filing of the Complaint.

[2] Viesti attaches to the Amended Complaint copies of hundreds of photographs that it alleges were the subject of McGraw-Hill's infringement.

B. Addenda to Assignment of Copyright

In or around January 2012, Mr. Viesti also requested that the photographers execute an Addendum to the Assignment of Copyright, (collectively "Addenda"), in order to "strengthen [Viesti's] Assignment form" after "[a]nother company's case was thrown out and forced to pay the defendant's legal fees, because their assignment form was not strong enough." (*See generally* ECF No. 90-7). The Addenda agreements read:

> The undersigned previously assigned copyrights and accrued claims in the undersigned's images ("the Images") to Viesti Associates, Inc. ("Viesti"). Viesti agreed to reassign all copyrights and complete legal title back to the undersigned immediately upon resolution of infringement claims relating back to the Images.
>
> For avoidance of doubt, it was and is the intention of the undersigned to convey to Viesti, fully and without reservation, the copyrights and claims so that Viesti has legal standing to enforce copyrights in the Images. If any provision of the previous assignment is deemed to be inconsistent with Viesti's standing to bring claims, such provision is void and shall have no effect.

(ECF No. 90-6).

C. Agency Agreements

Between 1990 and 2006, the photographers also entered into "Photographers Non-Exclusive Agency Agreements" (the "Agency Agreements") with Viesti. (*See generally* ECF No. 90-1). The Agency Agreements state, in relevant part:

> 1. I, the undersigned certify and warrant that I am the sole and exclusive owner of all digital files delivered to you, now and in the future. I appoint you as a non-exclusive agent and representative in respect of the leasing and sale of said materials throughout the world. All negotiations shall be at your discretion without prior consultation with me, except when outright purchase of originals is to be negotiated.
>
> 2. The compensation for your services (VIESTI ASSOCIATES, INC.) (VA) shall be fifty percent (50%) of the total sum billed and

> collected by you for the duration of our working relationship . . . .
>
> 3. In the event of . . . the unauthorized use of images by your client, I give you full and complete authority to make claims or institute suit, in your name if necessary, without further permission from me.

(ECF No. 90-1). The Agency Agreements further state that each agreement shall run for five years with automatic renewal. *Id.*

D. <u>2013 Agreements</u>

After Viesti filed this case, in March of 2013, the following 2013 Agreement was executed by Viesti and the photographers:

> This agreement memorializes the relationship between the undersigned parties and governs all photographic images authored by Photographer that have been included in the Viesti Associates, Inc.'s ("Viesti") collection, including those to which Photographer holds the copyrights and those which were previously assigned to Viesti ("the Images").
>
> Photographer hereby assigns to Viesti co-ownership of the copyrights in the Images not previously assigned to Viesti. Viesti hereby assigns to Photographer co-ownership of the copyrights in the Images previously assigned to Viesti. These assignments are intended to vest in both parties a co-ownership interest in the copyrights to the Images. These assignments include the right of both parties to authorize the reproduction of the Images in copies and the right to authorize the distribution and display of copies of the Images to the public.
>
> Photographer assigns to Viesti all rights, title and interest in any accrued or later accrued claims, causes of action, choses in action – which is the personal right to bring a case – or lawsuits, brought to enforce copyrights in the Images. This assignment authorizes Viesti, in its sole discretion, to present, litigate and settle any claims relating to unauthorized uses of the Images.
>
> Viesti agrees to reassign all copyrights back to Photographer upon resolution of claims brought by Viesti relating to the Images.

(*See generally* ECF No. 90-10). The 2013 Agreements were presumably drafted for purposes of clarifying the earlier assignments and curing any defects related to Viesti's

standing to bring copyright infringement claims in this case.

All of the above-referenced agreements were executed solely for the purpose of bringing copyright infringement lawsuits, and Viesti's only interest is the possibility of financial gain through an award from litigation.

## III. DISCUSSION

In the pending motion, McGraw-Hill seeks summary judgment arguing that Viesti does not have an exclusive copyright interest in the McGraw-Hill Photographs and therefore lacks standing to bring copyright infringement claims. McGraw-Hill also claims that Viesti is collaterally estopped from arguing that it has standing because the identical issue was recently litigated in this Court in both *Pearson I and Pearson II.*

### A. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Adamson v. Multicommunity Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); see Fed. R. Civ. P. 56(c). A fact is material if, under the governing law, it could affect the outcome of the suit. *Id.* A dispute is genuine if a rational jury could find for the nonmoving party on the issue. *See id.* In applying the standard, the court considers the factual record in the light most favorable to the nonmoving party without weighing the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A mere scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine dispute of fact. *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997). Nor do unsupported conclusory allegations create a genuine dispute of fact. *See Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1273

(10th Cir. 2005). In particular, when the nonmoving party will bear the burden of proof at trial, that party must designate specific facts in order to establish the existence of a material issue of fact and survive summary judgment. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"To prevail at summary judgment on standing grounds, the defendant must show that the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing." *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007). Likewise, "to prevail on such a motion a plaintiff must establish that there exists no genuine issue of material facts as to justiciability." *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002) (internal citations omitted).

B. Standing Under the Copyright Act

Under the Copyright Act of 1976, only the "legal or beneficial owner of an exclusive right under a copyright is entitled," subject to the requirements of section 411, to bring an action for copyright infringement. 17 U.S.C. § 501(b). Section 106 provides the following exhaustive list of six "exclusive rights" held by copyright owners:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106; *see also Silvers v. Sony Pictures Entertainment Inc.*, 402 F.3d 881, 887 (9th Cir. 2005) (recognizing that this list is exhaustive meaning "[i]f a right is not 'specified,' then it is not one of the exclusive rights granted by Congress.").

"Although the Tenth Circuit has not decided this specific issue, the weight of authority interprets § 501(b) [of the Copyright Act of 1976] as authorizing suit *only* by legal or beneficial owners." *Pearson I*, No. 11-cv-01687-PAB-DW, 2014 WL 1053772, at *5 (D. Colo. March 19, 2014); *see* 17 U.S.C. § 501(b). "Legal owners are those with legal title to at least one exclusive right" and "[b]eneficial owners are those without legal title, but with an interest in royalties or licensing fees flowing from an exclusive right." *Id.* at *6 (internal citations omitted). Thus, in order to assert a claim, "both legal and beneficial owners must show that they are the owners of at least one exclusive right set forth in § 106." *Id.* "Conversely, the holder of a nonexclusive license has no standing to bring an infringement claim." *Id.* Furthermore, it is well-settled that when a plaintiff's sole legal interest in a copyright is to bring an infringement claim, "courts have strictly applied the standing requirements set forth in § 501(b)." *Id*. at *7. "Therefore, the bare assignment of an accrued cause of action does not meet the standing requirement of § 501(b)." *Id.* (internal citations omitted); *see ABKO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("the Copyright Act does not permit copyright holders

to choose third parties to bring suits on their behalf."); *see Silvers*, 402 F.3d at 890.

C. *Pearson* I and *Pearson* II[3]

In both *Pearson I* and *Pearson II*, Viesti asserted copyright infringement claims against the educational publisher Pearson Education, Inc. Pearson filed motions for summary judgment in both cases on the issue of standing. In response, Viesti argued that "the various agreements [executed by the photographers] transferred to Viesti beneficial co-ownership of copyrights to the Pearson Photographs" and "assigned to Viesti all accrued causes of action with respect to the Pearson Photographs, giving Viesti standing to bring infringement claims that arose prior to the execution of the various agreements." *Pearson I*, No. 11-cv-01687-PAB-DW, 2014 WL 1053772, at *4 (D. Colo. March 19, 2014). In both *Pearson I* and *II*, District Judge Brimmer considered and rejected each of the bases for standing asserted by Viesti. After a thorough and detailed analysis, Judge Brimmer found that Viesti did not acquire any exclusive copyright interest in the non-party created and owned images. Judge Brimmer carefully analyzed Assignment of Copyright Agreements, Addenda, and Agency Agreements that are at issue in this case and reasoned that the agreements did not confer standing on Viesti. Specifically, Judge Brimmer found that while the Assignment Agreements "purport to grant Viesti copyrights and complete legal title," they "are silent as to any compensation or royalties the photographer will receive for such an assignment in the

---

[3] Viesti's claims in *Pearson I* involved photographs licensed by Viesti, Daniel J. Cox of Natural Exposures, Inc., Arctic Photo, and Art Directors and Trip Photo Library. *Pearson I*, 2014 WL 1053772, at *1. Viesti's claims in *Pearson II* involved photographs licensed by Wolfgang Kaehler. *Pearson II*, No. 12-cv-01431-PAB-DW, 2014 WL 1055975, at *1.

Image." *Pearson I*, No. 11-cv-01687-PAB-DW, 2014 WL 1053772, at *11 (D. Colo. March 19, 2014). "If the parties genuinely intended to transfer complete ownership, then Viesti would retain that ownership in perpetuity if it failed to bring suit." *Id.* Citing an abundance of authority, Judge Brimmer found that the Assignment Agreements "fail to confer on Viesti legal or beneficial ownership of an exclusive right." *Id.*, at *12; *see Pearson II*, No. 12-cv-01431-PAB-DW, 2014 WL 1055975, at *6 (D. Colo. March 19, 2014).

Considering the agreement's language, Judge Brimmer also found that the "Agency Agreement does not transfer to Viesti legal or beneficial ownership of an exclusive right." *Id.* at *13. "The agreements' first paragraph contains the only reference to ownership and clearly states that sole and exclusive ownership in the images is vested with the photographer." *Id.* at *12. Judge Brimmer went on to explain that a "beneficial owner for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on a sales or license fees." *Id.* In contrast, "Viesti has no claim, under the Agency Agreement, to royalties from the photographers' use of the copyrights. Because Viesti's economic interests are derived solely from its own use of the copyright and from the use of the copyright by its legal owners, the photographers, Viesti is not a beneficial owner pursuant to § 501(b)." *Id.* Accordingly, Judge Brimmer concluded that Viesti did not acquire any exclusive copyright interest in the third party images and therefore lacked standing under the Copyright Act to assert infringement claims. He then dismissed both cases in their entirety. A final judgment was entered in both *Pearson I* and *Pearson II*, and while Viesti filed a notice of appeal in both cases, the appeals were voluntarily

dismissed by the parties. I note that the identical agreements are at issue in this case.

D. Collateral Estoppel

Here, McGraw-Hill contends that Viesti is estopped from raising the standing arguments that it previously litigated and lost in both *Pearson I* and *Pearson II.*

Since this case is grounded in federal question jurisdiction, I must apply the federal law of collateral estoppel. *See Blonder-Tongue Lab., Inc. v. University of Ill. Found.,* 402 U.S. 313, 324 n.12 (1971). Under federal law, collateral estoppel "preclude[s] relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984). In the Tenth Circuit, collateral estoppel requires that the following four requirements be met:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992). "Collateral Estoppel . . . does not always require that the parties be the same. Instead, collateral estoppel requires an identity of issues raised in the successive proceedings and the determination of these issues by a valid final judgment to which such determination was essential." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995).

Here, there is no question that elements (2), (3), and (4) are met. The prior cases were litigated and Judge Brimmer entered summary judgment finding that Viesti lacked standing to bring the copyright infringement actions. A final judgment was

issued in both *Pearson I* and *Pearson II*, and the appeals were voluntarily dismissed by the parties, therefore, they were fully adjudicated on the merits. The party against who collateral estoppel is being invoked, Viesti, was a party in the prior cases. Additionally, there is no indication that Viesti did not have a full and fair opportunity to litigate the standing issue in the prior cases.

The remaining question I must address is whether the issues decided in the *Pearson* cases are identical to the ones presented in this litigation. Thus, I first turn to the Copyright Assignments executed in this case. Viesti does not appear to contest the collateral estoppel effect of the *Pearson* decisions as to the interpretation of the Copyright Assignments. Even if there was a challenge, I find that all of the requirements of collateral estoppel have been met. Viesti was a party in both *Pearson I* and *Pearson II*, and it had a full and fair opportunity to litigate the effect of the Copyright Assignments. Viesti did present arguments in support of its contention that the Copyright Assignments transferred to Viesti legal or beneficial ownership in copyrights to the McGraw-Hill Photographs. Further, Judge Brimmer's orders granting summary judgment were final judgments on the merits.

Finally, I note that while Viesti does not raise this issue, there are several photographers whose work is the subject of the alleged infringement in this case who were not involved in either *Pearson I* or *Pearson II.* However, since these photographers executed Copyright Assignments that are one and the same as the assignments that were at issue in both *Pearson* cases, I find that the issue is identical and collateral estoppel applies. Alternatively, even if collateral estoppel does not apply to these photographers, I agree with Judge Brimmer's well-reasoned conclusion that

these Copyright Assignments cannot be the basis for standing under the Copyright Act as they simply convey a bare right to sue. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.* (*Minden II*), 10 F. Supp. 3d 1117(N.D. Cal. 2014); *Minden Pictures, Inc. v. Pearson Edu.* (*Minden I*), *Inc.*, 929 F. Supp. 2d 962 (N.D. Cal. 2013).

Second, I turn the Agency Agreements. I note that "[t]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982). "A non-exclusive licensee does not have standing to commence a copyright infringement action." *Id.* Viesti argues that Judge Brimmer did not address the question of whether Viesti has standing as an exclusive licensor. I disagree. For purposes of collateral estoppel, the Agency Agreements at issue in this case use the same or substantially similar language to those Judge Brimmer analyzed in the *Pearson* cases. Judge Brimmer thoroughly discussed the meaning of the Agency Agreements in both *Pearson I* and *Pearson II* and determined that they did not transfer to Viesti legal or beneficial ownership of an exclusive right. In fact, Judge Brimmer specifically found "no basis upon which to conclude that the Agency Agreements convey to Viesti an exclusive license to the Pearson Photographs." *Pearson I*, No. 11-cv-01687-PAB-DW, 2014 WL 1053772, at *12 n.19. Alternatively, even if collateral estoppel does not apply to this issue, I find these Agency Agreements merely appoint Viesti "an exclusive agent and representative" and fail to transfer any exclusive licenses. (*See* ECF Nos. 94-2, 94-6, 94-7, 94-13). There is nothing in these agreements that restricts the photographers from licensing the same images on their own behalf or prosecuting all other

infringements, thus, Viesti has not demonstrated that it received an exclusive license. *See HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 385 (7th Cir. 2011). Consistent with Judge Brimmer's reasoning and the case authority, I find that the Agency Agreements confer a non-exclusive license to Viesti, which confers no standing to bring a copyright infringement claim.

Finally, I turn to the Addenda and 2013 Agreements. Judge Brimmer considered the same or substantially similar Addenda and "Third Assignments" in both *Pearson I* and *Pearson II*, which were executed in order to "cure any defects in Viesti's standing and bring claims related to the Pearson Photographs." *Pearson I*, No. 11-cv-01687-PAB-DW, 2014 WL 1053772, at *15. Judge Brimmer noted that "federal jurisdiction is determined based on facts as they existed at the time the complaint was filed" and "[a] party cannot attempt to amend defective jurisdictional facts once litigation has commenced." *Id.* Thus, without determining whether the Addenda and Third Assignments properly modified any existing agreements, Judge Brimmer found that since the "Addenda and Third Assignments were executed after [the actions were] filed, they cannot be the mechanism through which Viesti acquired the necessary rights." *Id.*

Here, I now address the Addenda. While the Addenda in this case were executed prior to suit, after carefully considering the language of the Addenda, I still find it to be insufficient to confer standing to Viesti. While the Addenda purport to grant Viesti "copyrights and complete legal title," the Addenda go on to state that "it was and is the intention of the undersigned to convey to Viesti, fully and without reservation, the copyrights and claims so that Viesti has legal standing to enforce copyrights in the Images." (*See generally* ECF No. 90-6). I find that this language clearly indicates that

the Addenda were executed solely for the purposes of bring suit. Just like the Copyright Assignments, I find that the Addenda fail to transfer any exclusive 17 U.S.C. § 106 rights in the McGraw-Hill Photographs and were executed solely for the purpose of bringing suit, which does not meet the standing requirement in § 501(b). *See Silvers*, 402 F.3d at 884.

Next, I turn to the 2013 Agreements, which were executed by Viesti and the photographers to presumably strengthen the original Copyright Assignments and Addenda. Even if collateral estoppel does not apply to the 2013 Agreements in this case, I find that the weight of case authority rejects Viesti's argument that subsequent assignments "of copyright can confer standing when the assignment of rights in place at the time the suit was filed had conferred only a bare right to sue." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C–12–4601 EMC, 2013 WL 1995208, at *8 (N.D. Cal. May 13, 2013); *Lujan v. Defenders of* Wildlife, 504 U.S. 555, 571 n.4 (1992); *Pearson I*, No. 11-cv-01687-PAB-DW, 2014 WL 1053772, at *15; *Righthaven LLC v. Allec,* 2:11–CV–00532–KJD, 2012 WL 909832 (D. Nev. Mar.16, 2012)*; Righthaven, LLC v. Hyatt,* 2:10–CV–01736–KJD, 2011 WL 3652532 (D. Nev. Aug. 19, 2011). Here, the 2013 Agreements were executed after Viesti brought suit in this matter, and consistent with Judge Brimmer's reasoning, Viesti "cannot attempt to amend jurisdictional facts once litigation has commenced." *Pearson I*, No. 11-cv-01687-PAB-DW, 2014 WL 1053772, at *15. Thus, I need not decide whether the language of the 2013 Agreements transfers to Viesti the necessary copyright ownership to confer standing because Viesti did not have a legal or beneficial ownership in the McGraw-Hill Photographs prior to the filing of this action. *Id.*

I find that collateral estoppel applies to bar the majority of Viesti's standing arguments. However, to the extent that the doctrine does not apply to the remainder of Viesti's arguments, after my careful review, I find that McGraw-Hill has shown that the record is devoid of evidence raising a genuine issue of material fact that would support Viesti's ultimate burden of proving standing. *See Day*, 500 F.3d at 1132. Moreover, Viesti has failed to establish that there exists no genuine issue of material facts as to justiciability in this case. *See Essence, Inc.*, 285 F.3d at 1280.

E. <u>The Effect of the *Lexmark* Decision</u>

Finally, Viesti contends that the United State Supreme Court's recent ruling in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S.Ct. 1377, 1391 (March 25, 2014)[4] alters the standing analysis in copyright infringement cases such as this. I disagree and find *Lexmark* distinguishable to the issues present in this case. Importantly, the holding in *Lexmark* does not address the test for standing under The Copyright Act, 17 U.S.C. § 501(b). Instead, *Lexmark* addressed the framework within which to analyze standing under The Lanham Act, 15 U.S.C. § 1125(a). *See id.* at 1385 n.2 (stating that "[o]ther aspects of the parties' sprawling litigation, including Lexmark's claims under federal copyright and patent law and Static Control's claims under federal antitrust and North Carolina unfair-competition law, are not before us. Our review pertains only to Static Control's Lanham Act claim.).

In *Lexmark*, the Supreme Court considered only the "straightforward question" of

---

[4] I note that the *Lexmark* decision was decided on March 25, 2014, six days after Judge Brimmer issued his orders granting summary judgment in favor of Pearson in both *Pearson I* and *Pearson II.*

whether the respondent "fell within the class of plaintiffs who, Congress has authorized to sue" for false advertising under the Lanham Act *Id.* at 1378. In doing so, the Court set out to interpret the broad statutory language set forth in 15 U.S.C. § 1125(a), which authorizes suit by "any person who believes that he or she is likely to be damaged" by a party's false advertising. *Id.* at 1388. The Court concluded that standing is determined by a two-step process involving a zone of interest inquiry and a proximate cause analysis. *Id.* at 1391. The Court's analysis was limited to the Lanham Act and does nothing to expand the parameters for standing set forth in The Copyright Act, 15 U.S.C. § 501(b). After my careful review of the *Lexmark* opinion, I find *Lexmark's* zone of interest and proximate cause tests inapplicable to the standing issue in this case and reject Viesti's arguments to the contrary. Since Viesti has no legal or beneficial copyright ownership interests in the McGraw-Hill Photographs, it does not have legal standing to bring suit under 15 U.S.C. § 501(b). Summary judgment is properly granted in favor of McGraw-Hill.

IV. <u>CONCLUSION</u>

For reasons set forth above, it is

ORDERED that Defendants' Motion for Summary Judgment (ECF No. 89), filed by defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC ("McGraw-Hill") is **GRANTED**. Accordingly, this case is **DISMISSED WITH PREJUDICE**, and Judgment shall enter in favor of defendants and against plaintiff on all claims. It is

FURTHER ORDERED that defendants are **AWARDED** costs, to be taxed by the

clerk of the court under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated:  February 11, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

.